## Case No. 15,948.

### UNITED STATES v. ONE HUNDRED BARRELS OF SPIRITS.

[2 Abb. U. S. 305;[1] 1 Dill. 49; 12 Int. Rev. Rec. 153; 3 Chi. Leg. News, 25.]

Circuit Court, E. D. Missouri. Oct. Term, 1870.[2]

INTERNAL REVENUE—TAX ON DISTILLERIES—FORFEITURES—INNOCENT PURCHASER.

1. The courts will not construe a law imposing a forfeiture, as extending to property which, before seizure, has been sold to a person innocent of the offense by which the forfeiture is incurred, and who has purchased in good faith, unless the intention of congress that the forfeiture should be absolute and instantaneous on the commission of the offense, be manifest and unmistakable.

[Cited in Corbett v. Woodward, Case No. 3.-223.]

[See U. S. v. Fifty-Six Barrels of Whisky, Case No. 15,095.]

2. Revenue laws inflicting penalties for their violation, are not to be construed strictly. nor with excess of liberality; but in such a manner, looking at their policy, purpose, spirit, and language, as will best effectuate the legislative intention.

3. Under the internal revenue act of July 13. 1866 (14 Stat. 98). a removal by a distiller, of spirits distilled by him, from the place of distillation to a bonded warehouse, is a legal act; and it cannot be predicated of such a removal, where this is the only overt act charged. that it was done to defraud the United States of the tax thereon, so as to bring the case within those contemplated by section 14 of the act.

4. Under the internal revenue act of July 13, 1866, as amended March 2. 1867 (14 Stat. 483), distilled spirits purchased in good faith by the claimant, while they were in a bonded warehouse of the United States. to whose collector he paid the taxes due thereon, cannot afterwards be seized in his hands and condemned as forfeited by reason of the previous failure of the distiller in the course of the manufacture thereof. to keep the books and to make the tri-monthly reports required of him by law.

5. Repeals by implication are not favored, particularly in revenue laws. and will only be held to exist when the repugnance is positive, and then only to the extent of such repugnance.

[Cited in brief in U. S. v. Crawford, 6 Mackey, 323.]

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

[2] [Reversed in 14 Wall. (81 U. S.) 44.]

6. Section 5 of the act of March 31, 1868 (15 Stat. 58), is not a repeal of that part of section 25 of the act of March 2, 1867 (14 Stat. 483), which denounces penalties against distillers, for failing to make the entries and reports required of them by law.

7. The legislation of congress respecting forfeitures against distillers,—reviewed; and the conclusion reached that it shows a uniform policy, from the beginning, not to extend forfeitures to property in the hands of innocent third persons.

[Cited in Corbett v. Woodward, Case No. 3,-223.]

[Error to the district court of the United States for the Eastern district of Missouri.]

Hearing upon a writ of error.

This cause was a proceeding in rem commenced in the United States district court for the Eastern district of Missouri, against one hundred barrels of distilled spirits, to enforce a forfeiture for violations of internal revenue laws.

It was alleged in the information, and admitted by the claimant in his answer, that seizure was made on land, in St. Louis, by the collector, September 1, 1868.

The fourth count of the information was in these words: "Fourth. That the said one hundred barrels of spirits were manufactured at some place within the. United States to the said district-attorney unknown, and between the first day of September, A. D. 1866, and the date of said seizure, by some person or persons to the said attorney unknown, and were there and then goods and commodities on which tax was there and then imposed by provisions of law, and the same were removed from the place where distilled, with intent to defraud the United States of such tax, the same being then and there unpaid, contrary to the form of the statutes in such case made and provided."

The fifth count in the information was as follows: "Fifth. That said spirits were manufactured at some place within the United States to said attorney unknown, between September 1, 1866, and the date of the seizure, September 1, 1868, by the use of certain boilers, stills, and other vessels, of which said unknown person or persons there and then had the superintendence, and that during the time said unknown person or persons carried on the business aforesaid, and both before said spirits were distilled, and while they were in his or their possession, said unknown person or persons neglected and refused from day to day to make or cause to be made a true and exact entry in a book kept in such form as the commissioner of internal revenue has prescribed, of the number of pounds and gallons of materials used for the purpose of producing spirits distilled, the number of gallons of spirits placed in warehouse, and the proof thereof, the number of gallons sold, with the proof thereof, and the name, &c., of the person to whom sold, contrary," &c.

The sixth count was the same as the fifth, just quoted, as to the manufacture of the spirits, and charged that the person having superintendence of the distillery: "Both before said spirits were distilled and afterward, and while the same were in his possession, did neglect and refuse on the 1st, 11th, and 21st days of each and every month, or within five days thereafter, to render the assessor, or assistant assessor, an account in duplicate, taken from his books in the particulars hereinbefore (in the fifth count of the information) mentioned of all the facts occurring after the last day of account preceding, contrary, &c., whereby and by force of said statutes the said property became and is forfeited to the uses in said statutes specified." One Henderson, of New Orleans, appeared as claimant, and filed an answer denying the material averments of the information as to grounds of forfeiture, and alleging "that said one hundred barrels of spirits were purchased by him while the same were in a bonded warehouse, and that he, the claimant, paid the tax imposed thereon by law before he moved the same from said bonded warehouse," &c.

The parties waived a jury, and submitted the cause to the court upon the following agreed statement of facts: "It is stipulated and agreed as follows: First. That John Henderson, claimant, purchased said spirits while in a bonded warehouse in New Orleans, after the same had been placed therein by the owner of the distillery at which they were made; that the claimant paid to the United States collector the taxes due on the said spirits, and moved the same from the said warehouse according to law, without knowledge on the part of Henderson, at any time before seizure, of any fraud on the part of the distiller, either actual or alleged; that he was an innocent and bona fide purchaser, and himself paid the tax on the spirits. Second. That Henderson shipped them to St. Louis, and had constructive possession thereof when they were seized. Third. That said spirits were manufactured and distilled in Louisiana in May and June, 1868, in a distillery run in the name of N. Johnson, by the use of boilers, stills, &c., of which Johnson was superintendent and owner; and that each and all the facts averred in the fifth and sixth counts of the information (above copied), averred as to a certain unknown person, are true as to said Johnson and the said spirits. Fourth. That the fourth count in the information (above copied) is true; but that the said Henderson, claimant, subsequently to the removal from the distillery, and before the removal from the bonded warehouse, and before the seizure, paid the tax on said spirits, and was a bona fide and innocent purchaser thereof. Fifth. That said Henderson was not a purchaser from the United States, and the United States at no time sold said spirits."

[No evidence was produced, and on the facts above stipulated the court adjudged

that the property in question was not forfeited. To reverse this judgment the United States sued out the writ of error which brings the case into this court.][3]

The attorney for the United States founded his claim for a forfeiture upon the facts alleged in the fourth count of the information above copied, under section 14 of the act of July 10, 1866 (14 Stat. 151), which is as follows: "That in case of goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods and commodities shall be removed, or shall be deposited or concealed in any place, with the intention to defraud the United States of such tax or any part thereof, all such goods and commodities and all such materials, utensils, and vessels respectively, shall be forfeited," together with casks, vessels, cases, &c., containing such goods; and every person guilty of or concerned in such removal, deposit, or concealment, with intent to defraud the United States of such tax, shall be liable to a fine or penalty not exceeding five hundred dollars.

[It is proper here to notice that section 45 of the same act (14 Stat. 163) relates specifically to the removal of spirits from places where distilled, and is in substance as follows:][3]

Section 45 of the same act (14 Stat. 163) relates specifically to the removal of spirits from places where distilled, and is in substance as follows: "That any person who shall remove any distilled spirits from the place where the same are distilled, otherwise than into a bonded warehouse, as provided by law, shall be liable to a fine of double the amount of tax thereon, or to imprisonment for not less than three months. All distilled spirits so removed, and all distilled spirits found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid, shall be forfeited to the United States, or may, immediately upon discovery, be seized, and after the assessment of the tax thereon, may be sold by the collector for the tax and expenses of seizure and sale." After providing for mode of procedure and burden of proofs, the section continues thus: "And any person who shall aid or abet in the removal of distilled spirits from any distillery otherwise than to a bonded warehouse as provided by law, or shall aid in the concealment of spirits so removed, shall be liable, on conviction thereof, to a fine of not less than two hundred nor more than one thousand dollars, or to imprisonment for not less than three nor more than twelve months." The only other sentence in the section provides for the punishment of illegal removal of spirits from any bonded warehouse.

The fifth count of the information, above recited, which alleged the failure of the distiller of the res to keep the book and make the entries prescribed by the commissioners, and the sixth count, which averred the failure of the distiller to make certain returns, were founded by the district-attorney upon section 31 of the act of July 13, 1866 (14 Stat. 157), and section 25 of the act of March 2, 1867 (14 Stat. 483), which are claimed by the district-attorney to be in substance the same as sections 57 and 68 of the act of June 30, 1864 (13 Stat. 243, 248). Section 31 in the act of 1866, is of the same general character as section 57 in the act of 1864; section 68 in the act of 1864 was the one which denounced the penalty for the acts or omissions made illegal by section 57, but no section corresponding to section 68 was contained in the act of July 13, 1866. This omission was supplied by the act of March 2, 1867, section 25, which is of the same general character with said section 68 of the act of 1864; but it contains some additions, particularly in relation "to materials fit for use in distillation found on the premises," which are regarded by the claimant as being very material, as showing the intention of congress not to forfeit spirits unless found upon the premises of the distiller.

To sustain the fifth and sixth counts in the information, the district-attorney relied upon section 31 of the act of July 13, 1866, and section 25 of the act of March 2, 1867. Section 31 requires the distiller to keep a certain book, and to make true and exact entries of certain facts therein, and also to make tri-monthly accounts, taken from the books, &c. It was admitted that the distiller of the liquor seized did not comply with the above-mentioned requirements of the law.

Section 25 of the act of March 2, 1867, before mentioned, was also cited as material in the controversy, and is in these words: "That the owner, agent, or superintendent of any still, . . . . who shall neglect or refuse to make true and exact entry and report of the same, or do or cause to be done any of the things by law required to be done concerning distilled spirits, shall, in addition to other fines and penalties now by law provided, forfeit, for every such neglect or refusal, all the spirits made by or for him, and all the vessels used in making the same, and the stills, boilers, and other vessels used in distillation, and all materials fit for use in distillation, found on the premises, together with the sum of five hundred dollars for each offense, with costs, and shall be deemed guilty of a misdemeanor, and be subject to imprisonment for a term not exceeding one year," &c. 14 Stat. 483.

It was admitted that the spirits which are now in controversy were manufactured in May and June, 1868, at which time the act

---

[3] [From 12 Int. Rev. Rec. 153.]

of March 31, 1868 (15 Stat. 58), had gone into effect, and was in force; and it was contended by the claimant that section 5 of this act repeals, by implication, the penalties denounced by previous acts, or that, being the later expression of the legislative will, it is the one which fixes the rights of the parties. This section is as follows: "That every person engaged in carrying on the business of a distiller, who shall defraud or attempt to defraud the United States of the tax on spirits distilled by him, or any part thereof, shall forfeit the distillery and distilling apparatus used by him, and all distilled spirits, and all raw materials for the production of distilled spirits, found in the distillery and on the distillery premises, and shall, on conviction, be fined not less than five hundred dollars nor more than five thousand dollars, and be imprisoned not less than six months nor more than three years." 15 Stat. 50.

The judge of the district court was of opinion that section 25 of the act of March 2, 1867, taken in connection with the act of 1866, did not work a forfeiture eo instanti; that the language of those sections being in futuro, they did not apply to property which, prior to the seizure, had passed into the hands of a bona fide purchaser. The court accordingly gave judgment that the property in question was not forfeited. [Case unreported.] To reverse this judgment, the United States sued out the present writ of error.

Chester H. Krum, U. S. Dist. Atty.
Edmund T. Allen, for defendant in error.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The property in controversy between the United States and the claimant consists of one hundred barrels of distilled spirits. The seizure was made September 1, 1868, in the city of St. Louis. It is admitted by the written stipulation of the parties, that these spirits were manufactured by one Nimrod Johnson, in the state of Louisiana, in the months of May and June, A. D. 1868; and that the claimant, Henderson, purchased them while they were in a bonded warehouse in New Orleans, after the same had been placed there by the owner of the distillery; that the claimant paid the United States collector the taxes due thereon, and moved the same from the warehouse according to law, without knowledge on his part, at any time before seizure, of any fraud on the part of the distiller, either actual or alleged. And it is distinctly admitted by the government that the claimant is a bona fide purchaser of the property. Judgment of forfeiture is sought, not for any violation of the law by the claimant, but for the violation of it by the distiller without the knowledge of the claimant, and at a period prior to the time when the res was placed in the government warehouse, and when the government collector received from the claimant the amount of taxes due on the property.

If the government is right, the claimant loses not only the spirits, but the large amount of taxes which he paid thereon—loses these entirely, or as to one is thrown on an uncertain resort upon his vendor, and as to the other, upon the sense of justice of the government. Where it is claimed that a law works such results, against which it is almost impossible for a purchaser to guard, the intention that it should do so ought to be unmistakable.

Before proceeding to examine the several grounds of forfeiture relied on by the United States, it may be advisable to notice two general propositions of law adverted to by counsel, and which bear upon the question to be determined.

The first is, that after the repeated decisions of the supreme court of the United States, it is to be taken as settled doctrine, that when a statute in terms denounces a forfeiture of property as penalty for violation of law, without alternative of value, or other qualifications or provisions, or language showing a different intent, the forfeiture takes place absolutely and instantaneously on the commission of the offense; title vests in the government from that moment, and it is not within the power of the offender or former owner to defeat the forfeiture by a subsequent transfer even to a bona fide purchaser. U. S. v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch [12 U. S.] 398; U. S. v. Grundy, 3 Cranch [7 U. S.] 338; Wood v. U. S., 16 Pet. [41 U. S.] 342; Caldwell v. U. S., 8 How. [49 U. S.] 366; Clifton v. U. S., 4 How. [45 U. S.] 242, 248.

Another undisputed principle of law is, that penalties annexed to violations of general revenue laws do not make such laws penal in the sense which requires them to be construed strictly. Nor, on the other hand, are they to be construed with an excess of liberality. But it is the duty of the court to study the whole statute, its policy, its spirit, its purpose, its language, and, giving to the words used their obvious and natural import, to read the act with these aids in such ways as will best effectuate the intention of the legislature. Legislative intention is the guide to true judicial interpretation. Taylor v. U. S., 3 How. [44 U. S.] 197, 210; Cliquot's Champagne, 3 Wall. [70 U. S.] 114.

The way is now cleared for a consideration of the several grounds of forfeiture insisted upon by the government. We shall notice first that which is set out in the fourth count of the information, the words of which are given above. The substance of this is, that these spirits, being subject to a tax imposed by the internal revenue law, were removed from the place where distilled with intent to defraud the United States of such tax. By whom removed, or to what place removed, is not alleged in the information. But on the

agreed statement of facts it is admitted that the spirits were "placed in a bonded warehouse at New Orleans, by the owners of the distillery at which they were made; that the claimant paid the taxes thereon," &c. It is also admitted "that the fourth count in the information is true; but that Henderson, claimant, subsequently to the removal from the distillery, and before removal from the bonded warehouse, paid the tax on the spirits, and was a bona fide purchaser."

Thus, the facts admitted by the parties are, that the spirits were removed by the distiller to and placed by him within the bonded warehouse of the government, and it is charged in the fourth count of the information, that the removal therein alleged was made with intent to defraud the United States of the tax imposed by law upon such spirits. And, as noticed above, the written stipulation admits that the fourth count in the information is true.

The attorney for the United States maintains the sufficiency of this ground of forfeiture under the facts thus alleged and admitted, and relies upon section 14 of the act of July 13, 1866, which, together with the substance of section 45 of the same act, is set out in the statement of the case preceding this opinion. 14 Stat. 151.

Section 14 is general and broad enough in its terms to embrace the removal of spirits, on which there is a tax, when this is done with intent to defraud the United States of the tax, but section 45 is the one specifically relating to the removal of spirits from the place where they are distilled. By this section, the removal of "distilled spirits, from the place where the same are distilled, otherwise than into a bonded warehouse, as provided by law," is prohibited, and is made punishable by penalties differing from those provided in section 14. It is, then, not an illegal act to remove spirits from the distillery to the bonded warehouse. It is to secure the government the tax, that they are thus allowed to be removed. How it can reasonably be predicated of a removal of spirits by the distiller into a bonded warehouse of the government, which is under the custody of its own officer, that it was done with intent to defraud the United States of the tax thereon, is not readily perceived, and is not explained in the pleadings, in the admission of facts, nor in the argument of counsel.

Without putting a strained or nice construction upon the language of the fourth count, and of the written admission respecting it, it is our opinion that the case, as made, does not fall within those contemplated by the above-mentioned section 14 of the act of July 13, 1866. The removal is the overt, illegal act alleged, and this was rightful; all that is left of the count under consideration is the intent with which the removal was made. We have said above, that it is difficult to see how it could have been made to defraud the Unit-

ed States of the tax; and a mere intent to defraud, formed or existing in the mind of the distiller, which intention has never been executed, or attempted to be, is not made a ground of forfeiture. The only execution, cr attempt to execute the unlawful intent alleged, viz: to defraud the United States of the tax on the spirits, is the removal of the spirits by the distiller to the warehouse of the United States, which removal was legal, and not an illegal act.

For these reasons, our opinion is that the spirits in controversy were not forfeited by reason of the facts set forth in the fourth count of the information, and in the written admissions of the parties.

The other grounds of forfeiture relied on by the government are those set forth in the fifth and sixth counts of the information, which allege the failure of the distiller of the spirits in question to make the entries required by law in the book prescribed by the commissioner, and to make tri-monthly reports from the said book. It is admitted that the allegations of the information in this respect are true.

By examining critically the language of the information and of the written stipulation, it will be seen to admit of doubt whether the distiller, Johnson, was guilty of the aforementioned neglects at and during the period when the spirits in controversy were distilled, or whether his neglect was before or after the distillation of these spirits; but it is clear that the neglect of the distiller in this respect existed at a time when these spirits were in his possession.

Suppose, as the government contends, that section 25 of the act of March 2, 1867, applies to the case, and that the distiller was not in default as to entries and reports at the time the spirits in question were made, but that he made default in these respects while these spirits remained in his possession, are they forfeited by this section, which includes "all spirits made by or for him," or is this language limited to such spirits as are made by or for him while the neglect or refusal to make the required entries or reports continues?

As the counsel for the claimant has not rested his case upon any such ground, we waive its consideration, and proceed to examine the questions made by the respective counsel, so far as it is deemed necessary to do so.

The attorney for the government bases the claim to condemn the property as forfeited, by reason of the facts alleged in the fifth and sixth counts of the information, upon section 31 of the act of July 13, 1866 (14 Stat. 157), which imposes upon the distiller the duty of making the entries and tri-monthly report, and upon section 25 of the act of March 2, 1867 (14 Stat. 483), which denounces the penalty of forfeiture for the

neglect or refusal of the distiller to perform this duty. But to what the forfeiture extends, or when it is worked, are disputed questions in the case. The attorney for the claimant contends that the above-mentioned section 25, as to penalties, is repealed or superseded by section 5 of the act of March 31, 1868 (15 Stat. 58), which was in force when these spirits were made, and by which the forfeiture is limited to spirits found on the premises, or, at most, to those owned by the fraudulent distiller, if found elsewhere.

If the act of March 31, 1868, could be considered as entirely repealing the previous act, the conclusion of the claimant's counsel would be correct, viz: that under the act of 1868, spirits which before seizure had passed through a bonded warehouse, from the hands of the distiller into those of the bona fide purchaser, would not be forfeited for the previous frauds or acts of the manufacturer. But the law does not favor repeals by implication, particularly in revenue statutes, the provisions of which, to prevent fraud, are complicated, and enacted frequently at different times to meet special exigencies or defects in previous enactments. To operate a repeal by implication, the repugnance must be clear and positive, so as to leave no doubt as to the intent of congress. U. S. v. Sixty-seven Packages of Books, 17 How. [58 U. S.] 85, 93.

By recurring to section 5 of the act of 1868, it will be seen that it is limited to punishing distillers for defrauding, or attempting to defraud the United States of the tax on spirits distilled by them; and to convict the distiller, or to condemn property as forfeited under this statute, an intent to defraud must exist in the mind of the distiller, and be established by evidence. Whereas, under the act of 1866, section 31, and of 1867, section 25, an intent to defraud existing in the mind of the distiller is not made essential; if he neglect to make the entries or report required, the forfeiture in law attaches, although he may be able to show, as matter of fact, that his neglect was innocent of any fraudulent design. The penalties in section 5 of the act of 1868 being different from those in the former act, it is a repeal by implication, so far as it and the provisions of former acts provide for the same offense but no further. Norris v. Crocker, 13 How. [54 U. S.] 439; Sedg. St. & Const. Law, 125; Nichols v. Squire, 5 Pick. 168; State v. Whitworth, 8 Port. (Ala.) 434.

Being of opinion that the act of 1868 is not a repeal of that part of section 25 of the act of 1867, which denounces penalties against distillers for failing to make the entries and reports required of them, it is necessary now to consider another position taken by the claimant's counsel, viz: Admitting that section 25 of the act of 1867 is yet in force, and is the one applicable to this case, still, the spirits in controversy are not, under the agreed facts, forfeited by virtue of its provisions, because they were not found on the premises of the distiller, but in the possession of an innocent purchaser. The argument is, that the words, "found on the premises" relate to, and qualify the whole list of forfeited articles, including distilled spirits.

Upon an examination of the language of this section in the light of its legislative history adverted to in the statement of the case, and in the light of other provisions of the statutes relating to forfeitures denounced against distillers, it is our opinion that his position is substantially correct; in other words, that it was not the intention of congress to denounce an absolute and instantaneous forfeiture on the commission of the offense, of all spirits, but only those either found on the premises at the time of seizure or information given, or, if found elsewhere, still owned by the party guilty of the wrongful act or omission.

This conclusion, reached, it must be confessed, after some hesitation, and adopted with some lingering distrust of its soundness, rests full more upon the general spirit and purpose of the legislation of congress respecting the rights of third persons, than upon the particular words of section 25 of the act of 1867, if these stood alone with nothing beyond to aid in their interpretation. This conclusion is fortified by supposing congress in its legislation to have been regardful of the ordinary sense of justice, and not to have designed to make the innocent suffer for the acts of the guilty, and to visit the laches of officers of the revenue upon those guilty of no wrong and no neglect. And it is still further strengthened if we have regard alone to considerations of mere policy. Revenue is the sole purpose of all the complicated official machinery pertaining to the manufacture of spirits. The duty levied is high, the temptation to fraud correspondingly great. Congress will be presumed to have seen, unless the contrary clearly appears, that revenue would be promoted by making it safe to buy manufactured spirits, and would be injured by legislation of a contrary character, by which a "secret taint of forfeiture is indissolubly attached to the property, so that at any time, and under any circumstances, within the limitations of law, the United States might enforce their rights against innocent purchasers." Per Story, J., U. S. v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch [12 U. S.] 398, 406.

The policy of congress to confine the forfeiture to the property of the guilty, at least not to extend it to innocent persons, may be seen by section 130 of the act of 1864 (13 Stat. 306), which protects bona fide purchasers from forfeitures by frauds. The fraudulent vendor forfeits value, but the article bought bona fide and paid for cannot

be pursued in the hands of the purchaser. So in the act of July 13, 1866 (14 Stat. 153), if the distiller fails to pay the tax for carrying on his business (section 23), or fails to give bond, or gives a false or fraudulent notice (section 24), he forfeits only such liquors as are owned by him, or found upon the premises; which evidently means owned by him at the time of seizure or date of information given. So in section 5 of the act of March 31, 1868 (15 Stat. 58), so often mentioned, it is provided that the distiller who defrauds or attempts to defraud the United States of the tax on the spirits distilled by him, shall forfeit, among other things, "all distilled spirits and all raw materials for the production of distilled spirits found in the distillery and on the distillery premises."

This section, as above observed, does not repeal all prior laws inflicting penalties and forfeitures upon distillers, but repeals them only so far as they relate to the same offense. But being in pari materia with section 25 of the act of March 2, 1867, relied on by the district-attorney, and which governs this case, it may be properly resorted to when endeavoring to discover the meaning of that section. Under the act of 1868, spirits, which had passed into the hands of a bona fide purchaser, and not found in the distillery building or premises, would not be liable to be condemned as forfeited. So by the act of July 20, 1868 (15 Stat. 142, § 44), passed soon after the spirits in controversy were made and before they were seized, but which saves forfeitures already incurred (Id. 166, § 105), all obscurity as to extent of forfeiture is removed, and the forfeiture is in terms limited to "distilled spirits owned by such person (the offending distiller), wherever found, and all distilled spirits and personal property found in the distillery," &c. (Id. 142, § 44); and see sections 5, 7, and 19 of same act. This legislation shows quite satisfactorily a uniform policy on the part of congress from the beginning not to extend the forfeiture to innocent third persons.

In the light of these considerations, and of this legislative policy, we may now recur to section 25 of the act of March 2, 1867, which is the one relied on by the government, and we repeat it as our opinion that, under it, a neglect or refusal by a distiller to make entries and reports as required by law, does not forfeit spirits not "found" on the premises, and not, at the time when "found," the property of the offending distiller. It would, indeed, be strange if such a neglect or refusal, which is not necessarily fraudulent in fact, as we have before stated, should have

the effect to forfeit spirits in the hands of bona fide purchasers, when by other provisions of the statutes, as, for example, that of March 31, 1868, an actual fraud, accompanied with a fraudulent intent, would not have that effect.

The judgment of the court is, that under section 25 of the act of March 2, 1867, a forfeiture eo instanti is not worked for omissions of the distiller to make the entries and reports required of him.

This view, if correct, results in affirming the judgment of the district court, and renders it unnecessary to consider the other proposition of the claimant's counsel, which is, that if forfeiture attached to these spirits, eo instanti with the commission by Johnson, the distiller, of the offenses charged, the United States waived any right of property acquired of such forfeiture, when they accepted from Henderson, the claimant, the amount of the taxes due on these spirits, and surrendered them into his possession, he being innocent of fraud. We content ourselves with remarking, that the proposition, as stated, is of questionable correctness, for waiver would imply a power in the revenue officers which they do not possess, and perhaps also, a knowledge of the forfeiture, which it is not shown they had, when the taxes were received from the claimant and the spirits were surrendered to him. If any proposition could be maintained, it would be the one, that in view of the peculiar provisions of the law for detecting frauds, the ample facilities it supplies its officers, its system of bonded warehouses, the government, by accepting and retaining the taxes paid to it by the claimant is estopped to say the property all the time belonged to it by reason of a previous forfeiture of title by the vendor of the claimant. Whether the view is correct, or whether the case could be successfully distinguished from those in which the supreme court has held, under the customs revenue acts, that the forfeiture might be enforced against the property in the absence of innocent and subsequent purchasers, we pass without deciding, resting our determination of this case upon the grounds before stated.

The judgment of the district court must be affirmed. Judgment affirmed.

[The above judgment was reversed by the supreme court, where the cause was carried on writ of error. 14 Wall. (81 U. S.) 44.]